UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY D. PEARCE,                                        Case No. 10-14720

               Plaintiff,                         Sean F. Cox
v.                                                      United States District Judge

CHRYSLER LLC PENSION PLAN,                              Stephanie Dawkins Davis
                                                        United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 72, 73)**

**I.      PROCEDURAL HISTORY**

Plaintiff filed a complaint against the defendant Chrysler LLC Pension Plan

in Wayne County Circuit Court, which was subsequently removed to this Court on

November 29, 2010.  (Dkt. 1).  Defendant filed an answer to the complaint on

December 6, 2010 and the case was referred to Magistrate Judge Michael

Hluchaniuk on April 6, 2011.  (Dkt. 11).  The parties had disputes regarding

discovery and the administrative record.  Based on Judge Hluchaniuk's

recommendation, this matter was remanded to the administrator for further

development of the record.  (Dkt. 26, 30).

After the administrative proceedings concluded, plaintiff filed a motion to

reopen the case, which was granted by Judge Cox.  (Dkt. 33).  Judge Cox set

deadlines for filing the administrative record and the parties' cross-motions for judgment on the record.  (Dkt. 34).  The record was filed on December 13, 2012 and a supplement was filed on January 14, 2013.  (Dkt. 35, 36).  On January 18, 2013, plaintiff filed a motion for leave to amend the complaint along with the motion for judgment on the record.  (Dkt. 38, 39).  In the motion for leave to amend the complaint, plaintiff asked to add a claim for relief under ERISA § 502(a)(3), in addition to the claim already brought under § 502(a)(1)(b). Plaintiff requested, and was granted, the opportunity to file an amended motion for leave to amend the complaint, which was referred to Judge Hluchaniuk.  (Dkt. 50, 51).  Judge Hluchaniuk recommended that plaintiff's motion for judgment be denied, defendant's motion for judgment be granted, and that plaintiff's motion for leave to amend the complaint be denied.  (Dkt. 55).  These recommendations were adopted by Judge Cox.  (Dkt. 60).

Plaintiff appealed to the Sixth Circuit, which reversed in part.  (Dkt. 64). Contrary to the decisions below, the Sixth Circuit concluded that there was conflict between the plan document and the summary plan description (SPD) and therefore, plaintiff's motion for leave to amend the complaint to add a claim under ERISA § 502(a)(3) was not futile.  The Sixth Circuit specifically held that "it is clear that Pearce is not eligible for 30-and-Out benefits under terms of the Plan, and thus he cannot recover under ERISA § 502(a)(1)(B)."  (Dkt. 64, Pg Id 1857).

The Court further concluded however, that a material conflict between the SPD and the plan could support a claim for equitable relief.  The Court analyzed the issue as follows:

> As a preliminary matter, as used by the Plan, the word "retire" appears to refer to the time when a participant applies for pension benefits. For example, the SPD has a section entitled "When You Retire" that states: "Your pension begins the month following the date you elect to retire or following the last day you work, whichever is later." Thus, retirement does not appear to denote the day on which the employer-employee relationship ends. Rather, it is used as a term of art referring to the date on which the participant seeks pension benefits from the Plan.  It is with this understanding that we review the relevant portions of the SPD and Pension Plan.

> When Pearce, or another employee in his position, received the SPD, the circumstances as well as the SPD's form and organization would have led him to first review the requirements for early retirees between the age of 55 and 62 to be eligible to receive supplemental benefits: at least 85 points and 10 years of "credited service." Aware that he satisfied both of those requirements, Pearce would have continued reading, and discovered that the supplemental benefits would consist of "an early retirement supplement" because he had "30 or more years of credited service." Immediately after learning that he was eligible for the supplement, Pearce would see the rules governing receipt of the benefit: "You do not need to be actively employed at retirement to be eligible for a supplement. However, you must retire and begin receiving pension benefits within five years of your last day of work for the Company in order to receive any supplements for which you are eligible." Beyond this limitation, the SPD offered no indication to Pearce that

3

his eligibility was further contingent on his employment status at the time of retirement, and omitted the material limitation that appears in the Pension Plan regarding "Vested Terminated Participants." Thus, a "conflict" between the SPD and the Pension Plan exists because "the [SPD] misleads or fails to state additional requirements contained in the plan document." *See Lipker v. AK Steel Corp.*, 698 F.3d 923, 931 (6th Cir. 2012) (citing *Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 80 (6th Cir. 2009)). Indeed, the very wording of the limitation stated in the Pension Plan — "Notwithstanding the foregoing"— indicates that the limitation is inconsistent with the immediately preceding requirements, which are the only ones summarized in the SPD.

* * *

The problem of the conflict inherent when an SPD "fails to state additional requirements contained in the plan document," *Lipker*, 698 F.3d at 931, is compounded here by the language of the SPD. The use of the word "however" in the SPD's "Monthly Pension Supplements and Temporary Pension" section alerts participants that the two sentences should be read together. *See Reardon v. Kelly Servs.*, Inc., 210 F. App'x 456, 460 (6th Cir. 2006) ("The word choice and syntax of the [SPD] indicates that the two sentences of the provision were intended to be read together."). The first sentence clarifies that the participant need not be "actively" employed. It does not, however, explain if it is distinguishing "active" employees from "inactive" employees (as the Plan argues), or, rather, if it is simply stating that a participant's employment status is irrelevant (as Pearce argues). Given the appropriate lens through which we review SPD terms, *Kolkowski*, 448 F.3d at 850, it is easy to understand how Pearce, a non-attorney, would have understood the latter meaning. Either way, the second sentence sets forth the only affirmative requirement for the participant: the participant must "retire" and begin receiving benefits

4

> within five years of the last day of work. Stated
> differently, the first sentence explains what is not needed
> (you do not need to be an "active employee"), and the
> second sentence explains what is needed ("you must
> retire and begin receiving pension benefits within five
> years of your last day of work for the Company"). Pearce
> was not an active employee when he retired, and he
> began receiving pension benefits within months of his
> last day of work. Under the terms of the SPD (but not the
> Plan because of its additional exclusion), he qualifies for
> 30-and-Out benefits. It is irrelevant, for purposes of
> ERISA § 502(a)(3), that he is clearly excluded under the
> terms of the Pension Plan.

(Dkt. 64, Pg ID 1858-59, 1861-62). The Sixth Circuit expressed no opinion on the merits of plaintiff's § 502(a)(3) claims. (Dkt. 64, n. 7).

This matter is now before the court on cross-motions for summary judgment on plaintiff's § 502(a)(3) claims. (Dkt. 72, 73). This matter has been fully briefed by the parties. (Dkt. 77, 78, 81, 82). The court held oral argument on September 29, 2016, pursuant to notice. (Dkt. 84). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED**.

## II.    FACTUAL BACKGROUND

In October 2008, Chrysler offered a buyout with two early retirement incentives. In addition to an employee's regular benefits under the Chrysler

Group LLC Pension Plan (the "Pension Plan"), the buyout incentives offered an additional lump sum payment of $50,000 and a vehicle voucher for $25,000. (Dkt. 12-6, Pg ID 615; AR 527). On October 29, 2008, plaintiff was provided with pension statements, so he could consider his option. (Dkt. 12-5, Pg ID 588-606; AR 500-518). The pension statements repeatedly advised plaintiff, "For more detail on the benefit formula, see your Summary Plan Description . . . . Additionally, employees who have access in Dashboard Anywhere may also find Summary Plan Descriptions in the Benefits Section." (Dkt. 12-5, Pg ID 589, 597, 603; AR 501, 509, 515). Plaintiff originally contended that the SPD stated two requirements to receive "30 and Out" benefits, both of which were met by plaintiff. (Dkt. 12, Pg ID 121-122, 126-127; AR 33-34, 38-39).

The SPD states: "You do not need to be actively employed at retirement to be eligible for a supplement. However, you must retire and begin receiving pension benefits within five years of your last day of work for the Company . . .." (Dkt. 12, Pg ID 126; AR 38). Plaintiff was scheduled to be on vacation for the three days prior to Thanksgiving (November 24-26, 2008). (Dkt. 12-6, Pg ID 619; AR 531). Although on vacation, plaintiff was called in to attend an emergency budgeting meeting on November 25, 2008. As he left that meeting, he was told a new procedure had been put in place, and that he was required to submit signed paperwork verifying his decision regarding whether to accept or decline Chrysler's

6

buyout offer. *Id.* Plaintiff drove home from the budget meeting, picked up the incentive offers at his home, and returned to work as instructed to deliver signed paperwork declining the early retirement incentives. *Id.* Plaintiff declined the buyout offer, and according to plaintiff, accepted the risk that the he might lose his job in the future, based on the representations in the SPD, which he says guaranteed that "30 and Out" benefits could not be lost if his employment was terminated. (Dkt. 12-6, Pg ID 618; AR 530). Immediately on handing in his signed paperwork declining Chrysler's buyout offer, plaintiff says he was told that he was being terminated. (Dkt. 12-6, Pg ID 619; AR 531). According to defendant, plaintiff's employment was terminated on November 25, 2008, after an internal investigation revealed that plaintiff engaged in an improper use of company vehicles. (Dkt. 12-6, Pg ID 661; Dkt. 35, Pg ID 1163). The investigation revealed plaintiff drove Chrysler LLC vehicles home on a daily basis for more than one year, and plaintiff admitted that he had not driven his personal lease vehicle in more than one year. (Dkt. 35, Pg ID 1165)

The next day, on November 26, 2008, plaintiff contacted Benefits Express to apply for retirement. (Dkt. 12-5; Pg ID 576; AR 488). His first retirement check was issued on May 1, 2009, within five years after his last day of work (November 25, 2008), as required in the SPD. (Dkt. 12, Pg ID 126; Dkt. 12-5, Pg ID 582; AR 38, 494). However, plaintiff's check did not include "30 and Out"

7

Benefits.  On March 20, 2009, the Pension Plan (1) explained that plaintiff was disqualified for "30 and Out" Benefits because he was a Vested Terminated Participant, and (2) once again provided plaintiff with a copy of the SPD as his source of reference for the terms of the Pension Plan.  (Dkt. 12, Pg ID 103-106; AR 15-18).

On March 21, 2009, plaintiff challenged the Pension Plan to "tell me what page in that document can we find what you have stated and you have written."  (Dkt. 12, Pg ID 151; AR 63).  Plaintiff objected because the only plan document which he had been given (the SPD) states, "You do not need to be actively employed at retirement to be eligible for a supplement."  *Id*.  According to plaintiff, the Pension Plan has never identified where this disqualification was disclosed in the documents that plaintiff had been given.  On March 19, 2010, the Benefit Express Determination Review Team (the "Review Team") refused to consider the SPD, which had been repeatedly given to plaintiff, and instead disqualified him based on a plan document (the Chrysler Pension Plan) which had never been shown to him.  (Dkt. 12, Pg ID 166-167; AR 78-79).  The Review Team denied plaintiff's request because his "employment with the Corporation ceased prior to the date [he] retired."  (Dkt. 12, Pg ID 166; AR 78).  Plaintiff asserted that the Review Team offered no explanation for the statement in the SPD that "You do not need to be actively employed at retirement to be eligible for a

8

supplement.  However, you must retire and begin receiving pension benefits within five years of your last day of work for the Company . . .."  (Dkt. 12, Pg ID 126, 166; AR 38, 78).

On March 30, 2010, plaintiff's attorney requested the actual Pension Plan document, which had never previously been shown to plaintiff.  (Dkt. 12, Pg ID 168; AR 80).  On May 5, 2010, the Pension Plan provided plaintiff with the complete plan documents. (Dkt. 12-1, Pg ID 173; AR 85).  On May 17, 2010, plaintiff submitted a timely appeal to the Chrysler Employee Benefits Committee (the "Benefits Committee").  (Dkt. 12-6, Pg ID 615-621; AR 527-533).  On July 16, 2010, the Benefits Committee notified plaintiff that it would need additional time, and that it would respond by September 17, 2010.  (Dkt. 12-6, Pg ID 569; AR 569).

After this matter was remanded by the Court to the administrator, on April 13, 2012, the pension plan administrator supplemented the administrative record.  Plaintiff renewed his appeal on July 18, 2012.  (Dkt. 36, Pg ID 1222-1226; AR 650-654).  On September 20, 2012, the Benefits Committee affirmed its denial of "30 and Out" Benefits because "Pearce was a Vested Terminated Participant. Under the terms of the CPP, he is not eligible to receive an Early Retirement Supplement."  (Dkt. 36, Pg ID 1227-1229).  The Benefits Committee acknowledged:

> "[T]he Summary Plan Description (SPD) says 'you do not need to be actively employed at retirement to be eligible for a supplement.'"

(Dkt. 36, Pg ID 1228).  However, the Benefits Committee asserted:

> "That statement does not address Pearce's situation. Pearce was not employed by the company in an active, inactive or other leave status at the time of his retirement. Company records show that Pearce was terminated not employed at retirement."

(Dkt. 36, Pg ID 1228).  As set forth above, the district court agreed with defendant's interpretation of the plan documents and the SPD.  However, plaintiff appealed to the Sixth Circuit, which reversed in part.  (Dkt. 64).  The Sixth Circuit specifically held that "it is clear that Pearce is not eligible for 30-and-Out benefits under terms of the Plan, and thus he cannot recover under ERISA § 502(a)(1)(B)."  (Dkt. 64, Pg Id 1857).  But, contrary to the decisions below, the Sixth Circuit concluded that there was conflict between the plan document and the SPD and therefore, plaintiff's motion for leave to amend the complaint to add a claim under ERISA § 502(a)(3) was not futile.  *Id*.  After discovery and full briefing on cross-motions, now before the Court are the merits of plaintiff's claims for equitable relief under § 502(a)(3).

## III.   ANALYSIS AND CONCLUSION

Defendant generally posits that while the Sixth Circuit found that there is a conflict between the SPD and the terms of the Plan, that finding does not

automatically mean plaintiff can obtain relief under ERISA § 502(a)(3).  Rather,

plaintiff must still prove that such equitable remedies are available to him under

the circumstances here.  In *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), the United

States Supreme Court recognized, in *dicta*, that under appropriate circumstances,

§ 502(a)(3) may authorize three possible forms of equitable remedies: estoppel,

reformation and surcharge.  According to defendant, plaintiff's First Amended

Complaint seeks equitable relief in the form of reformation of the Pension Plan

itself and estoppel, but does not seek surcharge.  Defendant is correct that

plaintiff's First Amended Complaint does not expressly set forth a claim for

surcharge.  (Dkt. 68).  Notably, plaintiff has never moved to add such a claim.[1]

  A. Standard of Review

  Typically, in a case involving benefits under an ERISA plan and where the

plan administrator has discretionary authority to determine eligibility for benefits,

the Court is to review the administrative record under the "arbitrary and

capricious" standard of review, and to affirm the underlying benefits decision if

the decision was "rational in light of the plan's provisions." *Univ. Hosps. of

Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir.2000) (citing *Yeager*

---

[1] As defendant correctly points out, plaintiff's claim under ERISA § 502(a)(1)(B) was already determined to be without merit by the Sixth Circuit, as discussed above.  Thus, this count of the First Amended Complaint can be dismissed without further analysis.  (Dkt. 68, Count II, Pg ID 1887).

*v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996)). However, where the claim involves an alleged breach of fiduciary duty, the *de novo* standard of review is appropriate under Rule 56 of the Federal Rules of Civil Procedure is applicable. *Weaver v. Prudential Ins. Co. of Am.*, 2011 WL 4833574, at *4 (M.D. Tenn. Oct. 12, 2011); *see also Med. Mut. of Ohio v. k. Amalia Enterprises Inc.*, 548 F.3d 383, 389 (6th Cir. 2008) (applying summary judgment standard to review of § 502(a)(3) claim).

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397,

12

401 (6th. Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). Once the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed. R. Civ. P. 56(e)(2), (3); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden–the plaintiff on a claim for

13

relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET. AL. MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.3d at 1056.  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

B.   Reformation

The Sixth Circuit has held that "reformation is available where the parties to a contract reached a valid agreement, but that mutually agreed-upon understanding was inadequately, mistakenly, or fraudulently conveyed in writing." *Alexander v. Bosch Automotive Systems, Inc.*, 232 Fed. Appx. 491, 498 (6th Cir. 2007) (citing

14

*Perkins-Campbell Co. v. United States*, 264 U.S. 213, 218-19 (1924)). According to defendant, plaintiff has not pleaded and can point to no evidence in the administrative record supporting mistake or fraud; and therefore is not entitled to reformation. Defendant points to a Ninth Circuit Court of Appeals decision applying *Amara*, which explained that in the law of contract, a court may reform a contract to reflect the true intent of the parties if both parties were mistaken about the content or effect of the contract. *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162 (9th Cir. 2012) (citing Restatement (Second) Of Contracts § 155 (1981)). Under *Skinner*, the court may reform the contract to capture the terms upon which the parties had a meeting of the minds. *Id*. (citing *Am. President Lines, Ltd. v. United States*, 821 F.2d 1571, 1582 (Fed. Cir. 1987)).

Defendant also relies on *Morales v. Intelsat Global Service LLC*, 554 Fed.Appx. 4 (D.C. Cir. 2014) in which the Court held that even if an SPD violates ERISA § 102, that showing alone is insufficient to support reformation. Rather, plaintiff must still prove a mutual mistake to justify reformation. *Id*.; *see also*, *JP Morgan Chase Bank, N.A. v. Winget*, 602 Fed. Appx. 246 (6th Cir. 2015) ("Reformation is permitted only under very limited circumstances. Among those is the parties' mutual mistake."). Here, while plaintiff seeks to reform the Pension Plan itself, defendant insists that plaintiff has no evidence of a mistake in the drafting of the Pension Plan. Instead, plaintiff alleges that there was a mistake in

15

drafting the SPD. Defendant maintains that Sixth Circuit case-law makes clear that reformation of a particular document is appropriate only when there is a mistake or fraud in the drafting of that same document, not some other document. Thus, according to defendant, reformation is unavailable.

Defendant next asserts that plaintiff has not shown any evidence that the language in the Pension Plan was procured or induced by fraud, duress, or undue influence. Defendant maintains that the evidence of fraud must relate to the "procurement" of the Pension Plan itself, not some action on the part of plaintiff. Plaintiff has neither evidence of inducement nor evidence of intent in the drafting of the Pension Plan. Furthermore, plaintiff's First Amended Complaint does not allege fraudulent drafting of the SPD, and defendant asserts that plaintiff likewise has no such evidence related to the SPD. Defendant argues that to the extent plaintiff alleges an inconsistency between the SPD and the Pension Plan, plaintiff has no evidence of an inconsistency that was intentional or fraudulent. Consequently, defendant maintains that plaintiff cannot show that any language in the SPD was procured by fraud, and correspondingly cannot show evidence supporting reformation.

In response, plaintiff contends that there was a mistake in the true understanding between the parties because he reasonably relied on the SPD. Plaintiff maintains that because of defendant's failure to provide a copy of the

16

Plan, plaintiff reached the "only possible mutual understanding." (Dkt. 78, Pg ID 2796). Thus, according to plaintiff, the Court must look at the SPD to determine the parties "mutual understanding." Plaintiff also points out that *Skinner* identifies a second path to reformation which relies solely on one party's misrepresentation and the other party's justifiable reliance on the same. "In the law of contract, a court may reform a contract when (1) one party seeks reformation, (2) the party's assent was induced by the other party's misrepresentations as to the terms or effect of the contract, and (3) the party seeking reformation was justified in relying on the other party's misrepresentations." *Skinner*, *supra* at 1166, citing Restatement (Second) Contracts § 166 (1981). According to plaintiff, the Court of Appeals has already ruled that there was a misrepresentation, and the facts are undisputed that plaintiff justifiably relied on the SPD (the only document the Pension Plan chose to make available to him).

The Court finds the Second Circuit's post-Supreme Court remand decision in *Amara*, on appeal from the District Court, to be instructive in analyzing plaintiff's claim for reformation. The Second Circuit first made it clear that contract principles, not trust principles, govern the analysis. *Amara v. CIGNA Corp.*, 775 F.3d 510, 524-525 (2d Cir. 2014) (citations omitted) ("*Amara V*"). A contract may be reformed due to the mutual mistake of both parties, or where one party is mistaken and the other commits fraud or engages in inequitable conduct.

17

*Amara V*, at 525 (citing *Simmons Creek Coal Co. v. Doran*, 142 U.S. 417, 435(1892); *see also Amara III*, 131 S.Ct. at 1879 ("The power to reform contracts ... is a traditional power of an equity court ... and was used to prevent fraud."); 27 Williston on Contracts § 69:55, at 160 (4th ed. 2010) (reformation is available in a situation where "owing to the fraud of one of the parties and mistake of the other[, the writing] fails to express the agreement at which they arrived). In *Amara V*, the parties agreed that CIGNA was not mistaken about the terms of the plan and thus, the plaintiffs, to establish that reformation was appropriate, "were required to show that defendants committed fraud or similar inequitable conduct and that such fraud reasonably caused plaintiffs to be mistaken about the terms of the pension plan." *Id*. at 526 (citing Rest. (Second) of Contracts § 166). The facts required to satisfy the elements of reformation must be proven by clear and convincing evidence. *Id*. (citing 2 Dobbs, Law of Remedies § 11.6(1) at 743; *Healy v. Rich Products Corp*., 981 F.2d 68, 73 (2d Cir. 1992)).

Plaintiff does not seem to suggest that this case involves a mutual mistake. Rather, plaintiff must satisfy the second path for reformation in order to succeed - unilateral mistake plus fraud or similar inequitable conduct. In *Amara*, the defendants "misrepresented the terms of CIGNA's new pension plan and actively prevented employees from learning the truth about the plan." *Amara V*, at 526. As explained in *Amara I*, "CIGNA employees suffered from the lack of accurate

18

information in CIGNA's disclosures, and CIGNA was aware of this fact." *Amara I*, 534 F.Supp.2d at 342.  CIGNA's misbehavior was designed to "ease the transition to a less favorable retirement program."  *Id*. at 343.  As a result, the Second Circuit concluded that the district court did not err in finding that defendants obtained undue advantage through these actions by avoiding adverse employee reactions.  *Amara V*, at 527.

Plaintiff contends that the mistake in the SPD here stems from "inequitable conduct" by the Pension Plan because the SPD violated ERISA, 29 U.S.C. § 1022(b).  Even assuming that plaintiff is correct that his interpretation of the SPD can properly constitute a mistake for purposes of reformation, in the view of the undersigned, there is no evidence that the Plan engaged in fraud or other inequitable conduct.  Under plaintiff's theory, every time an SPD violates ERISA, 29 U.S.C. § 1022(b) by conflicting with the Plan document, a claimant would be entitled to reformation.  Under *Amara V*,  more is required.  Conversely, the Court is not convinced, as defendant advances, that plaintiff must prove fraud in the drafting of the Pension Plan document.  Otherwise, it would  be virtually impossible for a conflict between the SPD and the plan document to ever result in a reformation claim.  Defendant argues that "[t]o the extent that Plaintiff alleges that there is an inconsistency between the SPD and the Pension Plan, which Defendant disputes, Plaintiff has no evidence of an inconsistency that was

intentional or fraudulent.  Plaintiff cannot show that any language in the Pension Plan or SPD was procured by fraud and therefore cannot show evidence supporting reformation." (Dkt. 77, Pg ID 2449).  While the Sixth Circuit determined that the SPD was not clear and did not properly convey the terms of the Pension Plan, the Court agrees with defendant that plaintiff has not offered any evidence of an intent to deceive, which is required by *Amara*.  Thus, the remedy of reformation is unavailable to plaintiff.

C.    Estoppel

Defendant also maintains that plaintiff cannot prove estoppel.  In *Bloemker v. Laborer's Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010), the Sixth Circuit for the first time recognized equitable estoppel in the pension benefit - as opposed to welfare benefit – context.  *Id*. at 440.  The court set forth the traditional elements of an estoppel claim that must be met:  (1) there must be conduct or language that amounts to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on or conduct toward the party asserting the estoppel such that the latter has a right to believe the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) the party seeking estoppel must reasonably or justifiably rely on the representation to his detriment.  *Id*. at 442.  Prior to *Bloemker*, estoppel could not

20

be applied to unambiguous pension plan provisions. *Id*. In *Bloemker*, the Court

expanded the application of estoppel to unambiguous pension plan provisions

where the plaintiff can demonstrate the traditional elements of estoppel, including

that the defendant engaged in intentional deception or such gross negligence as to

amount to constructive fraud, plus (1) a written representation; (2) plan provisions

which, although unambiguous, did not allow for individual calculation of a

benefit; and (3) extraordinary circumstances in which the balance of equities

strongly favor the application of estoppel. *Id*. at 444.

Defendant argues that plaintiff has no evidence of the second element

(awareness of the true facts) of estoppel. "The second element requires the

plaintiff to demonstrate that the defendant's actions 'contained an element of

fraud, either intended deception or such gross negligence as to amount to

constructive fraud." *Bloemker*, 605 F.3d at 443. In *Paul v. Detroit Edison Co*., 94

F.Supp.3d 880 (E.D. Mich. 2015) (Cox, J.), aff'd 642 Fed.Appx. 588 (6th Cir.

March 2, 2016), this Court found that additional conduct beyond an "honest

mistake" gave rise to evidence of gross "negligence as to amount to constructive

fraud upon Plaintiff." *Id*. at 888. Specifically, in *Paul*, company representatives

responded to the plaintiff's request for clarification of calculations by assuring him

that the calculations were correct. *Id*. Here, defendant asserts that plaintiff has no

such evidence. Plaintiff testified that the only person he talked with about his

pension was his wife.  (Dkt. 72, Ex. 5 - Plaintiff's dep., p. 55).  Prior to plaintiff's

retirement, no representative of the Pension Plan made any representations to

plaintiff regarding his eligibility for an Early Retirement Supplement.  (Dkt. 72,

Ex. 5 - Plaintiff's deposition, pp. 19, 20).  Instead, plaintiff's evidence of

"constructive fraud" is the language of the SPD itself, which both Judge Cox and

Magistrate Judge Hluchaniuk found reasonably informed participants that they

were not entitled to the supplement if they were not actively employed.  Although

the Sixth Circuit found that the SPD and Pension Plan conflicted in such a way as

to allow plaintiff the opportunity to assert claims under *Amara*, defendant

maintains that a conflict in the language of the SPD and the Pension Plan, standing

alone, supports nothing more than evidence of an honest mistake.  Defendant

insists that the SPD language cannot be said to amount to constructive fraud,

particularly where it was twice previously found to reasonably inform participants

of the Plan's terms.

   Defendant also argues that plaintiff has no evidence of the additional

*Bloemker* elements required: (1) Pension Plan provisions that did not allow

participants to determine their eligibility for benefits; or (2) extraordinary

circumstances.  According to defendant, plaintiff cannot show that the Pension

Plan language did not allow him to determine whether he was eligible for an Early

Retirement Supplement.  To the contrary, plaintiff could easily determine

22

whether he would receive an Early Retirement Supplement based on the Pension

Plan language which provided: "Notwithstanding the foregoing [requirements], a

Vested Terminated Participant who met the eligibility requirements for early

retirement at the date his employment terminated shall not be eligible to receive an

Early Retirement Supplement." The Sixth Circuit confirmed as much in holding

"here, it is clear that Pearce is not eligible for 30-and-Out benefits under the terms

of the Plan." (Dkt. 64, Page ID 1857). Accordingly, defendant maintains that

plaintiff could determine his eligibility for an Early Retirement Supplement by

reference to the Pension Plan, and therefore has no evidence supporting this

*Bloemker* element.

Defendant also asserts that plaintiff cannot show any evidence of

extraordinary circumstances in which the balance of equities favors the application

of estoppel. In *Paul*, the court found "extraordinary" circumstances present where

the defendant provided inaccurate information regarding the plaintiff's pension

before the plaintiff retired and a company representative "expressly and personally

assured Plaintiff" that the statements were accurate. *Id*. at 891. In addition, the

*Paul* court found that the defendant paid the plaintiff the wrong pension benefit

for more than two years and then informed him that his future benefits would be

permanently reduced and he would have to pay back the overstated benefits. *Id*.

Here, defendant points out that plaintiff has no such evidence. Before plaintiff's

retirement, no representative of the Pension Plan made any representations to plaintiff regarding his eligibility for an Early Retirement Supplement. (Dkt. 72, Ex. 5 - plaintiff's dep., pp. 19, 20). Plaintiff was not paid an incorrect pension, informed that his pension would be stopped or informed that he would have to repay overstated benefits. (Dkt. 72, Ex. 5 - plaintiff's dep., p. 25, 26). Thus, defendant asserts that plaintiff has no evidence of such extraordinary circumstances and cannot establish a basis for estoppel.

Addressing each of the disputed elements in turn, plaintiff maintains that under *Bloemker,* the second element of estoppel may be shown by constructive fraud. *Bloemker* at 443. Under federal law, constructive fraud is a misrepresentation made in breach of a legal or equitable duty. "Constructive fraud is a breach of legal or equitable duty which, in spite of the fact that there is no moral guilt resulting from the breach of duty, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Guy v. Lexington-Fayette Urban County Gov't*, 57 Fed. Appx. 217, 224 (6th Cir. 2003). "Constructive fraud may be found merely from the relation of the parties to a transaction or from circumstances and surroundings under which it takes place." *U.S. v. Lichota*, 351 F.2d 81, 90 (6th Cir. 1965). Constructive fraud may be established where there is a breach of legal or equitable duty, whether or not fraudulent intent be present. *Edwards v. Travelers Ins. Of*

24

*Hartford*, 563 F.2d 105, 114 (6th Cir. 1977).  "Failure to disclose thus becomes

fraudulent when it is the duty of a party having the knowledge to reveal the facts

to the other party."  *Edwards*, at 114-115.

Plaintiff asserts that the Court of Appeals already made findings as to two

elements of constructive fraud in its Opinion.  First, the Court of Appeals found a

failure to disclose when it decided that "a 'conflict' between the SPD and the

Pension Plan exists because 'the [SPD] misleads or fails to state additional

requirements contained in the plan document.'" (Dkt. 64, p 9).  Second,  the Court

of Appeals found a legal duty when it decided that ERISA § 102(a) creates a duty

to provide a SPD that has been "written in a manner calculated to be understood

by the average plan participant, and shall be sufficiently accurate and

comprehensive to reasonably apprise such participants and beneficiaries of their

rights and obligations under the plan."  (Dkt. 64, p 8).  "The summary plan

description is therefore a fiduciary communication to plan participants and

selecting the information to convey through it is a fiduciary activity."  *Stiso v. Int'l

Steel Grp.*, 604 Fed. Appx. 494, 498-499 (6th Cir. 2015).  Although unnecessary

for a finding of "constructive fraud," the Court of Appeals strongly implied that

the drafting of the SPD was grossly negligent, when it found "notable that

inclusion of a single sentence, the exclusion clause (which is already required by

29 U.S.C. § 1022(b)), would have easily prevented this misunderstanding from

25

arising." (Dkt. 64, p 9). Plaintiff points out that the plaintiff in *Bloemker* met the element of "fraud" by "alleging that the Plan and Stone were aware of the true facts and that they intended for Bloemker to rely upon their representations." *Bloemker*, 605 F.3d at 443. For an SPD, those allegations are implicit: (1) the Chrysler Plan cannot honestly assert that it was not aware of the terms and conditions in its own Plan Document, or (2) that it did not intend for plaintiff to rely on its Summary Plan Description which failed to accurately and comprehensively apprise plaintiff of his rights and obligations under the plan. Thus, plaintiff maintains that he has met the showing of "constructive fraud."

Plaintiff does not address the additional elements set forth in *Bloemker* until his reply brief in support of his own motion for summary judgment. Notably, districts in this Circuit continue to apply *Bloemker* post-*Amara*, including a recent opinion from Judge Cleland in *Alquahwagi v. Shelby Enterprises, Inc.*, 2016 WL 4771329, *6-8 (E.D. Mich. Sept. 14, 2016); *see also Stark v. Mars, Inc.*, 879 F.Supp.2d 752 (S.D. Ohio 2012); *Crawford v. Pace Industry Union-Management Pension Fund*, 2014 WL 509475 (M.D. Tenn. Feb. 7, 2014). According to plaintiff, he suffered an injury similar to the extraordinary circumstances found in *Bloemker*. Plaintiff is seeking benefits for which he was fully qualified, and later lost because of his reliance on an official misrepresentation in the Plan's SPD. "It is grossly unfair to hold an employee accountable for acts which disqualify him

26

from benefits if he had no knowledge of these acts or if these conditions were stated in a misleading or incomprehensible manner in the plan booklets." (Dkt. 64, p. 10) (quoting *Edwards v. State Farm Mutual Automobile Ins. Co*., 851 F.2d 134, 136 (6th Cir. 1988). As in *Bloemker*, the documents provided to plaintiff (the SPD, the Estimated Benefit Calculations, the Buyout Offers) did not allow plaintiff to calculate his eligibility, because the only documents available to him failed to include the additional qualification. According to plaintiff, extraordinary circumstances exist because he lost benefits he had already earned due to his reliance on an SPD to which he had been repeatedly referred by the Pension Plan. *Paul v. Detroit Edison*, 642 Fed. Appx. 588 (6th Cir. 2016). Thus, plaintiff maintains that equitable relief of estoppel should be granted.

The Court agrees with defendant that plaintiff is not eligible for the relief of estoppel because he does not have any evidence to support the additional *Bloemker* elements required: (1) Pension Plan provisions that did not allow participants to determine their eligibility for benefits; or (2) extraordinary circumstances. Plaintiff cannot show that the Pension Plan language did not allow him to determine whether he was eligible for an Early Retirement Supplement. As explained by Judge Cleland in *Alquahwagi*, "the plaintiff in *Bloemker* made a life-altering decision based on a specific, written representation certifying a certain entitlement, the plaintiff had no real reason to doubt that representation, and the

27

plan administrator demanded a remittence of over $11,000." *Id.* In the view of the undersigned, while plaintiff had a reasonable interpretation of his benefit based on the lack of clarity in the SPD, this is not the same as a specific representation by defendant regarding the calculation of his benefits. While plaintiff was given documents pertaining to the buy-out and the SPD, nothing suggested that if he were *terminated* from his employment, he would, in fact, be eligible for the 30 and out benefit. (Dkt. 73-5). Moreover, the Sixth Circuit has recently affirmed that mere reliance on misinformation is not sufficient to satisfy the *Bloemker* "extraordinary circumstances" requirement. *Donati v. Ford Motor Co.*, *Gen. Ret. Plan, Ret. Comm.*, 821 F.3d 667, 675 (6th Cir. 2016) (The Court rejected plaintiff's argument that she "expended considerable energy evaluating her situation, discussing with Ford representatives what her options were, and ensuring that paperwork would be completed accurately to ensure her pension would be paid out properly"even though she had been told the payout would be $230,361.49 while the actual payout was $38,840.34) (citing *Haviland v. Metropolitan Life Insurance Co.*, 730 F.3d 563, 567, 569 (6th Cir. 2013) (circumstances were not extraordinary when "MetLife falsely promised that [the plaintiffs'] continuing life insurance benefits would not be reduced for the rest of their lives, when in fact their benefits were reduced to $10,000," and "these false promises affected the plaintiffs' retirement and estate planning decisions."). Thus,

28

plaintiff's claim for relief under a theory of estoppel fails.

       D.    <u>Surcharge</u>

As set forth above, plaintiff did not plead surcharge in his amended complaint.  And, plaintiff does not address the failure to plead, except to suggest at oral argument that the matter was "litigated."  In the view of the undersigned, plaintiff's failure to expressly plead surcharge as relief for his § 502(a)(3) claim, coupled with his failure to respond to the argument pointing out this omission in his brief, his failure to move to amend the complaint to address to this omission, and failure to support the claim that the matter was "litigated" suggest a waiver of any surcharge claim.

While this claim could be dismissed based on the failure to properly plead alone, in the alternative, the undersigned will endeavor to address the merits since the parties have both briefed and argued this claim.  Plaintiff contends that the equitable relief of surcharge is available whenever a breach of trust has resulted in actual harm to a beneficiary.  *CIGNA Corp. v Amara*, 563 U.S. 421 (2011).  A court "simply order[s] a trust or beneficiary be made whole following a trustee's breach of trust."  *Amara*, at 444.  The only requirement is a breach of trust, which results in actual harm.  *Id.*  "That actual harm . . . might come from the loss of a right protected by ERISA or its trust-law antecedents."  *Id*.  "It is not difficult to imagine how the failure to provide proper summary information, in violation of

29

the statute, injured employees . . ..." *Id*. According to plaintiff, the Pension Plan violated its ERISA obligation to furnish a proper SPD, and he suffered the actual harm of losing his 30 and Out Supplement as the result. Further, the Pension Plan profited from its own violation. The Pension Plan kept the funds needed to pay Pearce's 30 and Out Supplement, and increased the Pension Plan's reserves, with the funds which would properly have been paid to Pearce had he been properly informed of all the rules. Plaintiff maintains that this is sufficient to invoke surcharge. *Silva v. Metro Life Ins. Co*., 762 F.3d 711, 720-722 (8th Cir. 2014); *Rainey v. Sun Life Assur. Co.*, 2014 WL 7156517 (M.D. Tenn. Dec 15, 2014). Under the equitable relief of surcharge, plaintiff asserts that the Pension Plan should simply be ordered to pay 30 and Out Supplemental benefits to Pearce.

According to defendant, *Amara* recited that the remedy of surcharge may be available *against a fiduciary* for a breach of that fiduciary's duties. The Pension Plan, however is *not* a fiduciary of itself under ERISA, 29 U.S.C. § 1002(21). Defendant also cites a number of cases it says hold that a pension plan is not a fiduciary. (Dkt. 77, Exs. L-O). Plaintiff conceded at oral argument that the Plan is not a fiduciary, but maintains that defendant's argument ignores that non-fiduciaries may be responsible for their participation in a breach of fiduciary duties. *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 246 (2000).

30

Primarily, defendant argues that the plan is not a proper party with respect to any breach of fiduciary duty claim. The first case it relies on involves a different section of ERISA. *See Steinman v. Hicks*, 252 F. Supp. 2d 746, 755-56 (C.D. Ill.), aff'd, 352 F.3d 1101 (7th Cir. 2003) (parallel citations omitted). In contrast, *Brennan v. CONRAIL Matched Sav. Plan* (E.D. Pa. 2000) (Dkt. 77-20, Ex. M) specifically holds that a plan participant may not bring a breach of fiduciary duty claim against the plan because the plan is not a fiduciary. *Id*. at Pg ID 2729. Again, in *Boucher v. Williams*, 13 F.Supp.2d 84, 93 (D. Me. 1998), the Court was addressing a different section of ERISA. But, the Ninth Circuit concluded that a breach of fiduciary duty claim cannot be brought against a plan:

> A plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets. Therefore, a plan itself cannot be sued for breach of fiduciary duty. This rule, however, does not inexorably lead to the conclusion that a plan cannot be properly named in a suit alleging breach of fiduciary duty. To the extent that a plaintiff seeks "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," the plan may be named as a defendant. 29 U.S.C. §§ 1132(a)(1)(B), 1132(d) (1988). Thus, even though Acosta cannot sue the SoCal Gas Plan for breach of fiduciary duty per se, he may, as he has done here, join the Plan in his action for breach of fiduciary duty in order that he may obtain the relief sought.

*Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991), as amended on reh'g (Jan. 23, 1992).

31

Here, as noted above, plaintiff conceded at oral argument that the plan is *not* a fiduciary. Thus, the question becomes whether plaintiff can pursue a breach of fiduciary duty claim against the Plan under the theory espoused in *Harris Trust*, *supra*. In the view of the undersigned, plaintiff cannot do so. *Harris Trust* did not necessarily open the door to all claims under ERISA that anyone who participates in or assists with a breach of fiduciary duty is responsible just as the fiduciary would be. In *Harris Trust*, a retirement plan had purchased certain motel interests from a company that the plan had been using as a stockbroker. *See Crosby v. Bowater Incorporated Retirement Plan for Salaried Employees of Great Northern Paper Inc.*, 382 F.3d 587 (6th Cir. 2004). As the *Crosby* court explained, because the stockbroker was a "party in interest," the purchase of the motel interests was prohibited under § 406(a)(1)(A) of ERISA, 29 U.S.C. § 1106(a)(1)(A). Invoking the "equitable relief" provision of ERISA § 502(a)(3), the trustee and the administrator of the retirement plan sued the stockbroker for rescission of the purchase of the motel interests; restitution of the purchase price, with interest, from the stockbroker; and disgorgement of any profits the stockbroker had made with the purchase money. *Id*. (citing *Harris Trust*). The Court of Appeals for the Seventh Circuit concluded that as a non-fiduciary, the stockbroker could not be held liable under § 502(a)(3) for participating in a transaction prohibited by § 406. *Crosby*, at 595 (citing *Harris Trust and Savings Bank v. Salomon Brothers Inc.*,

184 F.3d 646, 653 (7th Cir. 1999)).

The Supreme Court reversed, holding that the stockbroker's non-fiduciary status did not insulate it from claims for equitable relief under § 502(a)(3). The Supreme Court explained that "[o]nly a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." *Crosby*, at 595 (quoting *Harris Trust*, at 251). In *Crosby*, the Sixth Circuit found *Harris Trust* to be inapposite because the plaintiff was not seeking restitution to the plan of assets wrongfully conveyed to a third party, to have constructive trust imposed on assets so conveyed, or a disgorgement of profits made by a third party on ill-gotten assets. *Crosby*, at 595-596. Plaintiff seeks no such relief here, either.

As to the "harm" component of a surcharge claim, the parties disagree about what caused plaintiff's harm. Plaintiff contends it was the misleading SPD and defendant contends it was plaintiff's misconduct which caused him to be terminated. While plaintiff says that the breach of fiduciary duty is the misleading SPD, it is not clear what responsibility the plan itself has for preparing the SPD. While plaintiff asserts that the plan participated in its drafting, the record does not reflect this assertion. James Bante oversees operations for the Pension Plan, the SPD was prepared under his supervision and he personally reviewed drafts. (Dkt.

33

78, Pg ID 2790).  However, Mr. Bante is the secretary of the Employee Benefits Committee (the decision maker in this case) and is employed by Chrysler as the director of HR.  (Dkt. 78-6, Pg ID 2870, dep pp. 5-8).  He is not "the plan" nor did he testify that "the plan" prepared the SPD.

Plaintiff alleges that he was harmed by the language of the SPD because he did not receive an Early Retirement Supplement.  Defendant counter that the harm, if any, that plaintiff suffered was not caused by the SPD language, but rather by plaintiff's misconduct which lead to his discharge.  Although plaintiff alleges that he was concerned about Chrysler LLC's financial condition, plaintiff's concern is not what led to his termination of employment.  Plaintiff was not laid-off.  Plaintiff was not terminated because of reduction in the workforce.  Rather, plaintiff was terminated because of his misconduct related to the improper use of Chrysler LLC vehicles.  The undersigned agrees with defendant that plaintiff's misconduct, leading to his termination, caused him to not receive an Early Retirement Supplement, not the language in the SPD.  Plaintiff therefore cannot show harm caused by any breach of fiduciary duty and his surcharge claim also fails for this reason.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion

for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

35

Date: February 14, 2017                     s/Stephanie Dawkins Davis
                                            Stephanie Dawkins Davis
                                            United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

     I certify that on February 14, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                            s/Tammy Hallwood
                                            Case Manager
                                            (810) 341-7887
                                            tammy_hallwood@mied.uscourts.gov